SHEPHERD, C. J., and BURWELL, J., dissent.
There can be no question, upon the uncontradicted testimony, that the failure to blow for the crossing was negligence on the part of the defendant. Randall v. R. R., 104 N.C. 410; Hinkle v. R. R., 109 N.C. 472. The defendant, however, contends that plaintiff failed to "stop, look and listen," when he reached the point from which to the crossing it would be dangerous for the plaintiff to drive when a train was approaching. The principles here involved have been so clearly discussed and settled in recent cases in this Court, in those named above, and others there cited, that nothing is left for us but to apply known rules to the present circumstances.
Did the evidence offered by the plaintiff clearly show that the part of the road upon which the plaintiff had entered after passing the eminence, as it is called, and started down grade to the crossing was so (661) dangerous to travelers, in case of the approach of the train, that it was incumbent upon the plaintiff to look and listen for a train before proceeding further? The law is plain. "Where a person in charge of a wagon and team approaches a public crossing, it is his duty to look and listen and take every prudent precaution to avoid a collision, *Page 457 
even though the approach be made at an hour when no regular train is expected to pass. The same degree of care and caution should be exercised by one who is about to drive into such a narrow and dangerous pass as is described by the witnesses, if he would avoid the responsibility for any injury that may result from his carelessness." Randall's case, supra.
According to the plaintiff's testimony, he was in about sixty steps of the railroad when he heard the train and saw it coming, and he immediately jumped out and caught the young mule by the bridle. It was then that the noise was made by the exhaust of steam, or, as the witness said, "steam puffed out," and the team in consequence became unmanageable.
The witness Hall testified that the slope of ground where the accident occurred was considerable, and to the left of the wagon where it occurred were woods and deep gullies, so that the wagon could not turn out. Whether the witness intended to be understood to mean the whole extent of the road from the top of the hill to the crossing, or simply that portion of the road at and near the place where the catastrophe happened, is left in doubt. The plaintiff himself, the principal witness, describes the approach to the railroad, but not in such terms as would warrant the conclusion that it was so dangerous; and he admits that he was driving a young and "scary" mule, and he tells of his action and conduct on the occasion referred to. Was this testimony so clear that only one inference could be drawn from it? If so, it was the duty of the judge to decide whether there was such contributory negligence as relieved the defendant from ordinary care and amounted in (662) itself to the proximate cause of the damage received by plaintiff. The province of the judge and that of the jury is explained in Deans v.R. R., 107 N.C. 686. "Men of fair and reasonable minds might have drawn different conclusions from the evidence in this case." Was the place where the team became unmanageable so near to the crossing or to the track of the railroad that the plaintiff had reasonable ground to anticipate danger unless he took the prescribed precautions for one approaching the crossing? Or was that portion of the county road on which the plaintiff was then driving of such a dangerous character that it would not have been prudent for him to drive upon it at a distance of some sixty steps from the crossing? And, in the solution of these inquiries, was the jury satisfied that from this point all the way to the crossing the plaintiff could not ordinarily have stopped that particular team or turned it away from the railroad? There are possibly other questions involved, facts to be found by the jury under proper instructions *Page 458 
from his Honor, and which were not so clear that he was authorized to pass upon them himself.
New trial.
Cited: Russell v. R. R., 118 N.C. 1108, 1110, 1111; Mesic v. R. R.,120 N.C. 491; Norton v. R. R., 122 N.C. 935; Powell v. R. R., 125 N.C. 374;Jenkins v. R. R., 155 N.C. 204.
(663)