J. F. JENKINS AND WIFE *v.* NORFOLK-SOUTHERN RAILROAD COMPANY.

(Filed 11 May, 1911.)

1. **Railroads—Crossing—Duty of Pedestrian—"Look and Listen."**

   Before crossing a railroad track at a public crossing it is the duty of one traveling along the street or highway to look and listen and to take every reasonable precaution to avoid collision.

2. **Railroads—Crossings—Warnings—Duty of Engineer.**

   It is the duty of an engineer approaching a railroad crossing with a street or highway to blow his whistle or ring his bell at a reasonable distance therefrom to warn those traveling upon the street or highway of the danger of crossing the railroad at that time.

3. **Same—Negligence.**

   A railroad is held to be negligent and liable for the consequent damages in its train not giving the customary warnings in approaching a crossing of its track by a public road or street, whereby a horse of a traveler upon the highway, without negligence upon his part, becomes frightened by the close passage of the train, and consequently injures the traveler.

4. **Same—Contributory Negligence.**

   When there is evidence tending to show that the plaintiff looked and listened and took proper precautions for his safety before attempting to cross defendant's railroad track at a public crossing, and was injured by reason of the failure of defendant's engineer on a passing train to give the customary warnings, the view of the track being obstructed in the direction of the approaching train, the question of contributory negligence is a proper one for the jury.

APPEAL from *Justice, J.,* at the January Special Term, 1911, of LENOIR.

The action was brought to recover damages for alleged negligence in frightening the *feme* plaintiff's pony, whereby she was thrown from a buggy and injured.

The usual issues were submitted and answered in favor of the plaintiff and her damages assessed at five hundred dollars. The defendant appealed.

*Emmett Wooten and Murray Allen for plaintiff.*
*Rouse & Land for defendant.*

Brown, J.   The *feme* plaintiff was driving in a buggy with her father, and as they approached within ten or twelve feet of McIlwaine street crossing, for purpose of passing over the defendant's track, an engine and train rushed over the crossing and badly frightened the pony, causing him to swerve suddenly and throw the *feme* plaintiff from the buggy, injuring her.

The motion to nonsuit presents two questions:

1. Is there any evidence of negligence?   The evidence of plaintiff, as well as her father, appears to be quite positive that the engineer gave no signal, either by bell or whistle, as he approached the crossing.   The plaintiff states that she listened and could have heard the signal of an approaching train, but that none was given.   The plaintiff's father says with equal positiveness that no signal was given, no whistle blown or bell rung, but that the train ran on the crossing without warning.

It has been repeatedly held in this State that it is the duty of a person approaching a railroad crossing to look, listen and to take every reasonable precaution to avoid a collision; and that it is likewise the duty of the engineer to blow his whistle or ring his bell at a reasonable distance from the crossing, in order to enable travelers approaching the crossing for the purpose of passing over the tracks to avoid danger.   *Gilmore v. R. R.,* 115 N. C., 657; *Hinkle v. R. R.;* 109 N. C., 472; *Russell v. R. R.,* 118 N. C., 1098; *Butts v. R. R.,* 133 N. C., 82.

2. Does the evidence introduced by the plaintiff make out a case of contributory negligence?   This evidence, if taken to be true, establishes that when she turned into McIlwaine street the view of all that part of the track from whence the train approached was entirely obstructed by a building 75 yards long and situated within 25 feet of the track, so that neither she nor her father could see the train; that both looked up and down the track at the last available point; that the pony was gentle and they were driving very slowly; that the pony saw the train first when within ten feet of the track, and swerved suddenly and threw plaintiff out.   The evidence is positive and unequivocal that the plaintiff and her father looked for approaching trains at the last available moment before approaching the track.

It was, of course, the plaintiff's duty, as well as that of her

father, who was driving the pony, to listen for approaching trains, and especially so, as the view of the track was obstructed by the house. After reading their evidence, we do not think that the inference is necessarily to be drawn from it that they did not listen for the train signal.

On the contrary, from many of the answers it would seem that the plaintiff listened for train signals and is positive none were given. While the plaintiff's evidence upon this phase of the case is not as clear as it should have been made, we do not think, as matter of law, a motion to nonsuit could have been properly sustained upon the ground that in any view of it the plaintiff contributed by her own negligence to her injury.

It is true, as contended by defendant, that a railroad company is not liable for injuries received from horses becoming frightened upon a highway at the mere sight of its trains or the noises necessarily incident to the running of the train and the operation of the road. 3 Elliott R. R., 1264, and cases cited. But the basis of plaintiff's cause of action is the negligence of the defendant in failing to give a signal in reasonable time to warn her of the approach of its train to a public crossing. If it had been given, she avers, she would have heard it and stopped before getting in such dangerous proximity to the track, and thereby avoided injury.

Taking the evidence as a whole, we think the case was properly submitted to the jury in a charge which followed the settled decisions of this Court.

No error.