S. M. JACKSON, Administrator, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 30 March, 1921.)

1. **Railroads—Crossings— Contributory Negligence— Instructions— Evidence—Appeal and Error.**

 Where there is evidence tending to show that the train of the defendant at the crossing of a public road negligently ran into the automobile of the plaintiff's intestate as he was attempting to cross the track, his failure to come to a full stop before entering upon the right of way will not as a matter of law sustain a peremptory instruction in the affirmative on the issue of contributory negligence, there being evidence tending to show that the plaintiff's intestate was not negligent in other respects.

2. **Negligence—Contributory Negligence—Burden of Proof.**

 Where contributory negligence is relied upon, the burden is on the defendant to show it.

3. **Railroads— Crossings— Negligence— Signals—Warnings—Evidence— Questions for Jury.**

 Where a railroad train collided with an automobile and caused the injury complained of, where both the track and the public road were in a

cut of eleven feet approaching each other at an angle so that the approach of the train could not be seen more than eleven feet from the track, and there is evidence tending to show that the train, at sixty miles an hour, had approached without signal or warning, and without heeding a sign for that purpose placed about two hundred and fifty feet from the place of the collision, it is sufficient to take the case to the jury upon the issue of actionable negligence of the defendant.

**4. Instructions—Evidence.**

Upon an appeal from an instruction directing a verdict for defendant, the evidence must be taken in its most favorable aspect to the plaintiff that the jury could have considered it.

Appeal by both parties from *Guion, J.,* at November Term, 1920, of Robeson.

The plaintiff's intestate was a farmer who was killed at a railroad crossing about a quarter of a mile from his house as he was returning home in his automobile. He was struck by the defendant's northbound express train at a point where the railroad track crosses the public road one and a half miles north of the station at Buie's.

In approaching this crossing for a distance of several hundred yards the railroad and the public road run nearly parallel, gradually converging into a "V" and at a point about 114 feet from the crossing the public road makes a sharp turn and approaches the railroad at a right angle and through a cut about 11 feet deep. The railroad approaches the crossing through a cut of about the same depth. The uncontradicted evidence is that after turning this curve, 114½ feet from the defendant's track, it was impossible to see the train running north until within 10 feet of the track. The evidence shows that when the plaintiff's intestate turned the curve at that point and started through the cut, the train was 854 feet from the crossing. The railroad cut extended 250 yards in that direction. The evidence also shows that between the track and the public road there was a very heavy growth of young pine timber, bushes, shrubbery, and other undergrowth, and that this, together with the fact that the track is constructed through a cut 11 feet deep, obstructed the vision of the plaintiff's intestate in seeing the approach of the northbound train, which was running late and at a high rate of speed, estimated at 60 miles an hour or more by the railroad employees and other witnesses.

Practically all the witnesses, including the defendant's section foreman and his helpers, testified that the engineer did not blow for the crossing, nor did he ring the bell or give any other signal. The section foreman who reported the collision indicated in his report to the company, made on the day the deceased was killed, that no signal was given. One witness, Patterson, testified that when he saw the smoke from the defend-

ant's engine it was 854 feet from the crossing, according to measurements afterwards made, and at the same instant he saw plaintiff's intestate turn the curve and start through the cut to the crossing. He was traveling slowly, about eight or ten miles an hour. He was not seen again until after the train had passed, when he was found crushed and wounded, having been struck and thrown about 35 feet by the defendant's train. He died about ten o'clock p. m. of the same day in a hospital in Fayetteville.

*Russell & Weatherspoon, McIntyre, Lawrence & Proctor, and Johnson & Johnson for plaintiff.*
*McLean, Varser, McLean & Stacy and G. B. Patterson for defendants.*

CLARK, C. J. The court submitted three issues, as follows: (1) Was plaintiff's intestate killed through the negligence of the defendant, as alleged in the complaint? (2) If so, did plaintiff's intestate, by his own negligence, contribute to his injury and death? (3) What damages, if any, is plaintiff entitled to recover?

The court instructed the jury that if they believed all the evidence and found the facts to be as testified that they would answer the second issue "Yes," and the third issue "No," and they responded accordingly. The plaintiff excepted and appealed. The court also instructed the jury to answer the first issue "Yes," to which the defendant excepted and appealed.

There was no evidence that the plaintiff's intestate did not look and listen. There was evidence from which the defendant contends the jury should so find. There is evidence from which the jury could find to the contrary. There is no presumption in favor of contributory negligence, and the burden was on the defendant to prove it.

In *Norton v. R. R.,* 122 N. C., 929, it is said: "Where there is no evidence of the fact, the presumption is against contributory negligence, even in the absence of any statute, like our own, making it a matter of affirmative defense. *R. R. v. Gentry,* 163 U. S., 366; *R. R. v. Griffith,* 159 U. S., 609."

It cannot be declared, as a matter of law, that failure to come to a complete stop before entering upon a railroad crossing is contributory negligence. In *Perry v. R. R.,* 180 N. C., 290, the Court said: "Failure to stop before crossing a railroad track cannot be declared, as a matter of law, to be contributory negligence, but it should be considered by the jury in connection with the surrounding circumstances in determining whether the party was exercising the care of one of ordinary prudence."

In *Johnson v. R. R.,* 163 N. C., 442, the Court uses the following language: "Defendant requested the court to enter a judgment of nonsuit

upon the evidence, as plaintiff's intestate was guilty of such contributory negligence in driving upon the crossing without looking or listening as barred his recovery. The judge could not have done so without deciding an issue of fact, which he is forbidden to do, that being the function of the jury. Pell's Revisal, sec. 535, and cases cited in note. The evidence favorable to defendant's view of the case may be ever so strong and persuasive, but if there is a conflict of testimony it must be left to the jury, and they must find the facts."

In *Shepard v. R. R.,* 166 N. C., 544, the Court, through *Mr. Justice Hoke,* laid down the rule as follows: "Where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter upon a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of danger, and not imputed to him for contributory negligence."

In *Hinkle v. R. R.,* 109 N. C., 472, substantially the same rule is stated in the following language: "Where the injured person would not have gone on the crossing but for the negligence of the engineer in failing to give the proper signal, the railroad company will be held liable in damages resulting from a collision, although the party injured may have been careless in exposing himself."

The uncontradicted evidence tended to show that the train which struck the plaintiff's intestate was running late, and at a speed of about sixty miles an hour; that there was a whistle-post about two hundred and fifty to three hundred yards south of the crossing, put there for the purpose of indicating to the engineer that the whistle should be blown for the crossing, and the bell rung; that the defendant's foreman and a crew of men were standing near the whistle-post at the time the train passed, having been forced to remove a hand-car from the track to allow the train to pass; and that no signal whatsoever was given. About one-half dozen witnesses testified that they were in close proximity to the place where the whistle should have been blown and carefully observed that no signal was given, some of these witnesses being farmers residing in the neighborhood, and some of them employees of the railroad company.

In *Jenkins v. R. R.,* 155 N. C., 203, the Court said: "It is a railroad engineer's duty to blow his whistle or ring his bell at a reasonable distance from a crossing to warn those approaching the crossing with a view of passing over the tracks."

In *Hinkle v. R. R.,* 109 N. C., 472, it was also said: "For a moving train to omit to give, in a reasonable time, some signal when approaching a highway from which a train is hidden by an embankment, cut, or curve is negligence *per se.*"

JACKSON *v.* R. R.

The defendant put on no evidence. The jury could have found directly or by inference from the evidence taken in its most favorable aspect to the plaintiff the following state of facts:

That the space between the county road and the railroad had grown up so thickly in trees, gum bushes, alder bushes, gum trees, and pine bushes and pine trees, that the view of the deceased was completely obscured; that because of such obscurity, together with the screen afforded by the embankment on the defendant's right of way, the deceased could not see the approach, of the train until within eleven feet of the "T" iron at the crossing; that the deceased was carefully driving his automobile along the public highway, approaching the crossing at a speed of not more than eight or ten miles an hour; that the deceased knew of the crossing and was driving slowly and carefully for the purpose of effecting a safe crossing, no other conclusion being reasonably assignable for the slow speed of his machine, and it being presumed that he was conducting himself as an ordinarily prudent man; that the deceased, while purposing to cross in safety, considered the danger and looked and listened for some warning or signal of the approach of the train, and hence reduced the speed of his automobile as additional precaution; that those in charge of defendant's train, which was running at not less than sixty miles an hour, failed and neglected to ring the bell or blow the whistle as a warning to the deceased of its approach to the said crossing; that the failure to give such warning lulled the deceased into the belief that no train was near, and that he could cross in safety, and that, so believing, he attempted to drive over the crossing, and while so doing was fatally injured, and the jury could find that the conduct of the deceased, under all the facts and circumstances, was as an ordinarily prudent man would have conducted himself under similar circumstances, and being lulled into a state of security by the negligent conduct of the defendant, the deceased did not have the time or opportunity to save himself after passing within the danger zone.

It is true there was evidence from which the jury could have reached a different conclusion upon some of the statements in this recital, but as the evidence must be taken in the most favorable aspect to the plaintiff in which the jury could have considered and found them, it was error to direct a verdict against the plaintiff on the second issue, especially as the burden was upon the defendant to prove the affirmative on that issue. C. S., 523, and cases there cited.

Among the most recent cases on the subject directly in point are *Penninger v. R. R.,* 170 N. C., 473; *Perry v. R. R.,* 180 N. C., 290; *Kimbrough v. Hines, ib.,* 274.

There being error as to the instructions on the second issue, it is unnecessary to continue the discussion, and the case will be sent back for a new trial on all the issues.

Error.