AGNES RIGSBEE, ADMINISTRATRIX OF EDWARD W. RIGSBEE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 7 October, 1925.)

**1. Negligence—Railroads—Evidence—Questions for Jury—Nonsuit.**

Where there is evidence tending to show that the defendant railroad company had left a space between the cars in its stationary freight train on its yard, where it had continuously permitted its employees and others to pass in large numbers, and plaintiff's intestate, an employee, was killed there by a train rapidly moving on a close parallel track beyond, coming without signals or the customary warnings of its approach: *Held,* the failure of the defendant to give the customary warning on its moving train is sufficient on the issue of its actionable negligence to deny defend-, ant's motion as of nonsuit thereon.

**2. Same—Contributory Negligence—Burden of Proof.**

Under the facts of this case: *Held,* the mere fact that the defendant's employee may not have stopped, before going upon the track whereupon he was killed by the defendant's negligence in not giving the customary signals of its approach, did not bar him of his right to recover, as the sole, proximate and efficient cause.

**3. Negligence—Railroads—Death—Measure of Damages.**

To ascertain the damages recoverable by the administratrix of the deceased for his negligent killing by the defendant, the net-earnings rule requires the jury to deduct only the reasonably necessary personal expenses of the, deceased, and not the amount spent by him for his family or dependents, and testimony of a witness relatively construed that bases his estimate upon the witness' knowledge of the habits of the deceased, in this connection is properly admitted.

**4. Appeal and Error—Evidence—Harmless Error.**

Where corroborative evidence is erroneously excluded, its subsequent admission will render the error harmless.

APPEAL by defendant from *Cranmer, J.,* at April Term, 1925, of EDGECOMBE.

Civil action to recover damages for the intestate's death which occurred 15 March, 1923. The jury returned the following verdict:

1. Was the plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? A. Yes.

2. Did the plaintiff's intestate, by his own negligence, contribute to his death? A. No.

3. What damage, if any, is plaintiff entitled to recover? A. $15,000.00.

Defendant appealed from the judgment, assigning error.

*R. T. Fountain and George M. Fountain for plaintiff.*

*Thos. W. Davis, V. E. Phelps, F. S. Spruill and Bridgers & Bourne for defendant.*

ADAMS, J. The circumstances under which the plaintiff says her intestate suffered death are set out in the complaint and related in the testimony of her witnesses. The injury occurred about three-quarters of a mile from South Rocky Mount. At this place the defendant has two main lines, using the east line for northbound trains and the west line for trains moving southward. To the east of the northbound line is a track known as the lead track or the "Florence Lead," connecting the north and south freight yards and the Y. D. tower. Between the east and west main lines and between the east main line and the "Florence Lead" the distance is about three feet. Ten feet east of the "Florence Lead" there is a building designated in the record as the "D. I. office." The roadbed is lower than the adjacent ground, and for this reason the defendant keeps up a bridge extending from the embankment in front of the D. I. office to the lead track and another extending from the west embankment to the southbound line. Near the office were other tracks or switches, the relative situation of which it is not necessary to describe. On 15 March, 1923, to make use of needed space in one of the yards, the defendant pulled down on the lead track a freight train made up for Wilmington and left it standing near the place of the injury. Close to the bridge extending from the east embankment to the lead track there was an open space between two of the cars in this train covering a distance, according to the several estimates of the witnesses, ranging from five to fifty feet. There is evidence that for a number of years this crossing has been used, not only by the employees of the defendant, but by others, one witness testifying that in his opinion a thousand people cross the track at this place every day.

The plaintiff's intestate was an employee of the defendant, serving in the capacity of switchman or brakeman. He had been called for the 3 o'clock shift and a short time before his death had been seen cleaning his lantern on the rear porch of the D. I. office. A short time afterwards (about 3:10 p. m.), the defendant's train with seven or eight cars approached on the northbound track. It had come from Florence and was going in the direction of Rocky Mount. According to the plaintiff's evidence it was running forty miles an hour; and while it is usual for trains to blow for the crossing (R., p. 14), on this occasion no signal or warning was given by sounding the whistle or ringing the bell. The plaintiff's intestate, coming from the D. I. office, passed through the open space between the box cars and while in the act of crossing the east main line was struck by the engine and killed. Evidence on behalf of the defendant tended to show that the proper signals

were given and that the intestate heedlessly ran upon the track in front of the train and solely by his own negligence caused his injury and death.

The defendant contends that upon its motion the action should have been dismissed as in case of nonsuit. Exceptions 2 and 4. This position cannot be maintained. It was unquestionably the duty of the defendant in the exercise of due care to give timely warning of the train's approach by sounding the whistle or ringing the bell, or by both means if reasonably necessary, and if it failed to perform this duty such failure was evidence of negligence, requiring determination by the jury of all matters involved in the first issue. *Costin v. Power Co.,* 181 N. C., 196; *Jackson v. R. R., ibid.,* 153; *Perry v. R. R.,* 180 N. C., 290; *Bagwell v. R. R.,* 167 N. C., 611; *Hill v. R. R.,* 166 N. C., 592; *Jenkins v. R. R.,* 155 N. C., 203; *Norton v. R. R.,* 122 N. C., 910; *Hinkle v. R. R.,* 109 N. C., 472. The specific contention, that, as a proposition of law, the intestate's negligence was essentially the sole cause of his injury and death and a consequent bar to the recovery of damages, is not in accord with our decisions. We adhere to the principle that qualifying facts and conditions may so complicate the question of contributory negligence as to make it one for the jury even when there has been a failure to look or listen (*Cooper v. R. R.,* 140 N. C., 209); and surely upon the facts disclosed in the case at bar we cannot hold as a legal inference that the intestate's alleged negligence was such as entitles the defendant to a dismissal of the action. It is incumbent upon the defendant to establish contributory negligence as a matter of affirmative defense. *Jackson v. R. R.,* 181 N. C., 153; *Goff v. R. R.,* 179 N. C., 216; *Lea v. Utilities Co.,* 178 N. C., 509; *Lutterloh v. R. R.,* 172 N. C., 116; *Davidson v. R. R.,* 170 N. C., 281; *Shepard v. R. R.,* 166 N. C., 539. In *Davidson v. R. R.,* 171 N. C., 634, it is said that where a pedestrian without looking or listening goes in the daytime upon a railroad track, the view of which is unobstructed, and is injured thereby, his own negligence will be deemed the proximate cause of his injury and will preclude his recovery See, also, *Coleman v. R. R.,* 153 N. C., 322; *Trull v. R. R.,* 151 N. C., 545; *Parker v. R. R.,* 86 N. C., 221. But in the present case there is evidence tending to show that the intestate's view was obstructed and that he could not have seen the approaching train until he had come within one step of the track, and even then only by "sticking his head around the box car after getting down on the bridge." Whether he approached the track rapidly or slowly was a matter for the jury. Considering the entire evidence we think the defendant's motion for nonsuit was properly denied.

A witness for the plaintiff, after testifying as to the character, the habits, and the earning capacity of the intestate, said: "It is not my opinion that he spent much money on himself as distinguished from his family." To this the defendant excepted. In ascertaining net earnings the rule requires the jury to deduct only the reasonably necessary personal expenses of the deceased and not the amount spent for his family or those dependent upon him. *Carter v. R. R.,* 139 N. C., 500; *Roberson v. Lumber Co.,* 154 N. C., 328. The evidence excepted to must be considered in its relation to the preceding testimony of the witness, and when so considered it is not objectionable as a mere expression of opinion. It is apparent that this clause was an estimate based upon observation and knowledge of the intestate's industry and habits. *Taylor v. Security Co.,* 145 N. C., 383. The first exception, then, must be overruled.

The third exception also is without merit. The engineer, testifying on behalf of the defendant, offered to repeat a remark he had made to the fireman, probably concerning the ringing of the bell, although the substance of the remark is not set out in the record. *Snyder v. Asheboro,* 182 N. C., 708. But if the purpose was to show that the bell had in fact been rung and was still ringing, this circumstance was afterwards related by the engineer and the fireman. R., pp. 37, 52.

The fifth exception is addressed to an instruction which is a literal excerpt from the opinion in *Cooper v. R. R., supra.* It is perfectly evident that his Honor intended merely to state an established principle of law to be applied by the jury to the evidence relating to the second issue. He did not assume or intimate that the intestate's view was in fact obstructed, as contended by the plaintiff, and herein the instruction excepted to differs from that which was disapproved in *Withers v. Lane,* 144 N. C., 184.

The prayer for instruction which is the subject of the sixth exception runs counter to recognized principles in this class of cases. It was not the absolute duty of the intestate to stop, look, and listen simply because the defendant's track is a place of danger. There is no authority for holding that the law imposed upon the intestate the unqualified duty to *stop* before going upon the track. *Jackson v. R. R., supra,* and cases therein cited. The prayer is objectionable for the further reason that it disregards the alleged negligence of the defendant as a factor tending to explain the conditions under which the intestate approached the track. *Johnson v. R. R.,* 163 N. C., 431. Upon the same principle, and for the additional reason that the prayer omits all reference to the question of proximate cause, the seventh exception must be overruled. So likewise as to the eighth and ninth. Whether the crossing is technically a highway is immaterial. It was used by the

public as well as by the defendant's employees and whether the defendant exercised due care in the operation of its train at the place of the injury was a matter to be considered by the jury in connection with the character of the crossing and the defendant's knowledge of its use. The remaining exception is formal and requires no discussion.

We find

No error.